MCMILLIN, C. J.,
for the Court.
¶ 1. Edwin Eugene Pipkins was convicted in the Circuit Court of George County of two counts of drug-related criminal activity. The charges were for (a) possession of a controlled substance and (b) possession of precursor chemicals with the intent to manufacture a controlled substance. He has appealed his convictions to this Court and presents three issues for consideration. We have, for purposes of this opinion, rearranged the order in which the issues will be considered. First, he contends that the State’s evidence of guilt was insufficient as a matter of law to support the jury’s verdicts of guilty. Second, he contends that the trial court erred by permitting the State, in cross-examination, to raise matters concerning other bad acts for the sole purpose of prejudicing Pipkins in the eyes of the jury. Finally, Pipkins suggests that, even if the verdicts of guilty are upheld, he is entitled to a lesser sentence because, when the severity of his sentence is compared to that of his co-indictee who pled guilty, it is evident that he was punished strictly for exercising his constitutional right to trial by jury. We find nothing in the matters raised in this appeal to convince us that there is a basis in law to reverse Pipkins’s conviction or set aside his sentence. For that reason, we affirm the verdicts of the jury and the ensuing judgment of sentence entered by the trial court.
I.
Facts
¶ 2. Law enforcement officers answering a domestic disturbance call at a mobile home leased by Pipkins and his girlfriend, Debra Tyler, arrived at the location and found no one there. However, the officers observed in plain view a bag containing a substance that was believed by the officers to be a chemical used in the manufacture of illegal methamphetamine. Other officers working in narcotics law enforcement were summoned to the scene. Shortly thereafter, Tyler returned to the mobile home and consented to a search of the premises. A quantity of chemicals and other paraphernalia commonly associated with illegal methamphetamine manufacturing operations were discovered and seized along with a quantity of methamphetamine. The investigation revealed that the trailer had been leased jointly to Pip-kins and Tyler and that the deposit for electric utilities furnished to the location was made in Pipkins’s name.
¶ 3. Evidence placing Pipkins at the trailer in close proximity to the time officers arrived was disputed. One reasonable interpretation of the evidence presented was that the domestic disturbance reported to law enforcement had occurred shortly before officers arrived and that Pipkins had remained on the property after Tyler had left. The defense presented evidence tending to show that the reported disturbance had occurred several days earlier and that the officers had simply been *121 substantially late in efforts to investigate the nature of the disturbance.
II.
The Sufficiency of the Evidence
¶ 4. Pipkins alleges that the trial court erred in denying his JNOV motion on the ground that the evidence was insufficient, as a matter of law, to support a guilty verdict. The State’s case against Pipkins depended upon the theory that Pipkins was in constructive possession of the various items discovered on the premises based on his occupancy of the property as his primary residence. His defense consisted essentially of the contention that he had vacated the premises three or four days before the various items were discovered so that he was no longer in control of the premises, thereby defeating any contention that he was in constructive possession of items on the property. Additionally, he argued that, since he and Tyler were joint occupants of the property, his possession was not exclusive and, therefore, he could not be conclusively shown to be in constructive possession of the various materials charged in the indictment.
¶ 5. An issue of this nature requires this Court to review all of the admissible evidence presented at trial, viewing it in the light most favorable to upholding the jury verdict. Gleeton v. State, 716 So.2d 1083(¶ 14) (Miss.1998) (overruled on other grounds by Miss. Transp. Comm’n v. McLemore, 863 So.2d 31 (Miss.2003)). We must assume that the jury drew all reasonable inferences in favor of guilt that were legally and logically warranted. If we are satisfied that, viewing the evidence in that light, there was proof of the essential elements of the crime, we are charged by law to permit the verdict to stand.
¶ 6. There was no evidence showing that Pipkins was in actual possession of the drug-related materials. Rather, they were discovered on the premises of a residential property shown by the proof to have been occupied by Pipkins as his principal domicile, along with his female companion, Tyler. “A presumption of constructive possession arises against the owner of premises upon which contraband is found.” Cunningham v. State, 583 So.2d 960, 962 (Miss.1991). It was certainly within Pipkins’s power to present evidence that would tend to overcome the presumption, but our review of the record reveals only his contention that he had been gone from the property for several days prior to the discovery of the contraband. There was disputed evidence on this point with some of the evidence tending to indicate that the domestic disturbance that initially led to the appearance of law enforcement officers had, in fact, occurred just a short time prior to their arrival, rather than the several days alleged by the defense. In all events, the State’s proof showed that the property had been rented in Pipkins’s name and that the account for utilities was in his name. The jury, and not the trial court or an appellate court, is charged with resolving disputed factual issues. Jackson v. State, 845 So.2d 727(¶ 12) (Miss.Ct.App.2003). The jury heard all the evidence and was plainly satisfied that the circumstances of the case pointed toward the conclusion that Pipkins was the person primarily in control of the premises and, thus, in possession of any property discovered on that property, absent some plausible explanation tending to show otherwise. We do not find the defendant’s contention that he had voluntarily abandoned the property as his principal residence a few days before the discovery of the contraband to be so compelling as to require a determination that the State’s constructive possession case failed as a matter of law. Even if the jury accepted the time line offered by the defendant, *122 there was no factual basis to support a theory that the contraband material had been hastily assembled on the spur of the moment after Pipkins’s unanticipated and sudden departure from the residence. We decline to disturb the jury’s verdict after conducting our own review of the evidence.
III.
Evidence of Other Bad Acts
¶ 7. During the State’s cross examination of Pipkins, the prosecuting attorney engaged in a fairly lengthy inquiry into whether Pipkins had telephoned his co-defendant, Tyler, the night before she was scheduled to testify and attempted to intimidate or otherwise improperly influence her testimony. Pipkins admitted to having talked to Tyler on the telephone but denied any attempt to have her alter her testimony. This line of interrogation was permitted by the trial court over defense counsel’s timely objection. The State thereafter made no effort to show the nature of the telephone conversation by other evidence.
¶ 8. On appeal, Pipkins suggests that this was a violation of the prohibition against evidence of other crimes or bad acts found in Mississippi Rule of Evidence 404(b). We disagree that this suggestion of error properly frames the issue since there was no evidence of prior bad acts or crimes presented. The State certainly suggested certain improper conduct on the part of Pipkins through its questioning, but Pipkins denied any such behavior at every opportunity. A question posed by an attorney participating in the trial is not evidence, even though it may give rise to an inference that such evidence exists.
¶ 9. The actual issue does not involve the admissibility of evidence of this nature. The State was surprised by the nature of Tyler’s testimony, which represented a significant departure from her earlier statements given to law enforcement. Under that circumstance, the State was entitled to explore the believability of her in-court testimony by presenting evidence by which the jury could better assess her credibility. One way to do so was to present evidence relating to any bias, prejudice, or interest of Tyler. M.R.E. 618. Evidence that the defendant had, through threats of suicide by Pipkins and related attempts by him to manipulate Tyler’s testimony, would plainly have demonstrated potential bias on her part.
¶ 10. The problem presented is, thus, not the nature of the examination, but whether the State had a legitimate basis to suggest that such attempts to influence Tyler’s testimony actually occurred since Pipkins’s own responses-beyond his admission to the phone conversation itself-offered no supporting evidence and the State did not follow up by calling other witnesses to show the basis for the inquiries. We deal, therefore, not with an evidentiary question but a question of possible prose-cutorial misconduct for asking inflammatory questions without a good-faith basis in fact for doing so.
¶ 11. We decline to reverse Pipkins’s conviction on the ground of prosecutorial misconduct. We do not think that the questioning, followed by Pipkins’s firm denials of any improper activity, was so highly inflammatory and prejudicial to the defense as to affect the fundamental fairness of the trial. While we are satisfied that it would have been preferable for the trial court to have obtained some assurance that there was a credible foundation for the State’s inquiry, we do not find a reasonable basis to conclude that the State simply manufactured the allegations out of thin air for the sinister purpose of prejudicing the defendant in the jurors’ eyes with false accusations.
*123 rv.
Disparate Sentences
¶ 12. Tyler, Pipkins’s female companion and co-indictee, pled guilty and was ultimately sentenced to one year under house arrest. Pipkins, after his conviction, was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections. On appeal, he contends that the disparity in the sentences demonstrates that he was being punished, not for his guilt of the charged crimes, but for refusing to plead guilty and, instead, exercising his constitutional right to a trial by jury. The Mississippi Supreme Court has said that such disparity in sentencing raises an issue of impropriety that must be resolved by on-the-record findings by the trial court explaining the reasoning behind the sentences. E.g., McGilvery v. State, 497 So.2d 67 (Miss.1986).
¶ 13. In this case, there was originally no such explanation appearing on the record. This Court remanded for further findings of fact by the trial court on the issue. Those findings have now been filed with the Court and the parties have been offered the opportunity to file supplemental briefs on the issues of law and fact raised by the trial court’s findings.
¶ 14. The trial court, having heard all of the evidence, was of the opinion that Pip-kins was the driving force behind the drug-related activities and that Tyler participated, at least in part, just to support her own need for narcotics. The court further noted the marked disparity in ages of the two defendants, Pipkins being forty-five and Tyler being thirty-five, as tending to indicate that Pipkins was principally responsible for the operation. The court observed that Tyler had cooperated with law enforcement officials on the day of her arrest and had since voluntarily completed a drug rehabilitation program. The court found Tyler’s efforts to end the dominance of drug-related activities in her life to be sincere and genuine.
¶ 15. We find ample support in the record for the trial court’s findings relied upon to explain the marked disparity in the two sentences. We are not persuaded, in the face of the logical and well-thought-out reasoning of the court, that the court was unduly harsh in sentencing Pipkins based on his refusal to enter a plea of guilty. We, therefore, decline to disturb the sentence imposed on Pipkins after his conviction at the hands of the jury.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF TEN YEARS, AND POSSESSION OF A PRECURSOR DRUG OR CHEMICAL AND SENTENCE OF TWENTY-FIVE YEARS, SAID SENTENCES TO RUN CONCURRENTLY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND ORDER TO PAY $10,000 FINE ON EACH COUNT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.