# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00018-SCT

*LANIKIA SMITH, BY HER NEXT FRIEND,*
*BETTIE SMITH; CAMILLE CARTER, BY HER*
*NEXT FRIEND, LAREATHA CARTER; AMORY*
*SCHOOL DISTRICT AND AMORY SCHOOL*
*DISTRICT BOARD OF TRUSTEES*

*v.*

*CHARLES CLEMENT d/b/a M & W BUTANE GAS*
*COMPANY, INC.*

DATE OF JUDGMENT: 10/26/2005
TRIAL JUDGE: HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED: MONROE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: DAVID B. McLAURIN
MICHAEL ANTHONY WILLIAMS
JASON LEE SHELTON
ATTORNEY FOR APPELLEE: MICHAEL F. MYERS
NATURE OF THE CASE: CIVIL - PERSONAL INJURY
DISPOSITION: REVERSED AND REMANDED - 10/04/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Today we are asked to further clarify our approach to expert testimony under M.R.E.

702.  We hold that parties must be afforded an opportunity to be heard regarding their offer

of expert testimony.  Because that opportunity was not present in the case at hand, we reverse

and remand.

**Facts and Proceedings Below**

¶2. Lanikia Smith and Camille Carter were riding home on their school bus when it caught fire. While attempting to escape the burning bus, both girls were severely burned. Through their parents, the girls filed suit against Amory School District. Amory in turn sought indemnity from Charles Clement, who as M & W Gas Company converted buses owned by Amory from gasoline to propane use.[1] Amory argued that a defect in the propane gas system caused the fire.

¶3. In support of this theory of causation, Amory retained Dr. Richard E. Forbes, an expert in mechanical engineering, who provided a five-page affidavit advancing his theory. Clement filed a motion to strike the affidavit as insufficient under our requirements for Rule 702 and *Daubert*, including counter-arguments proffered by his own expert, along with a motion for summary judgment. M.R.E. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

¶4. On October 27, 2004, the trial court granted Clement's motion to strike Dr. Forbes's affidavit, holding in a one-page order "that the opinions expressed by Dr. Forbes in his affidavit are nothing more than unsupported conclusions which are devoid of a factual basis and not the product of reliable principles and methods." On the same day, the trial court granted Clement's motion for summary judgment, finding that there was "no genuine issue of material fact as to causation," as the plaintiffs could not offer credible expert testimony

---

[1]The plaintiffs have since settled their case with Amory School District.

as to causation. The trial court later denied motions to reconsider the orders filed by the plaintiffs and denied a request to submit a new affidavit by Dr. Forbes.

¶5.     Amory, Smith, and Carter appeal the various decisions of the trial court; we need only examine the trial court's order striking the affidavit.

**Discussion**

¶6.     We examine a trial court's decision to allow evidence, including proffered expert testimony, under an "abuse of discretion" standard. *See Webb v. Braswell*, 930 So. 2d 387, 397 (Miss. 2006). Here, the trial court struck the expert affidavit of Dr. Forbes – and accordingly, any expert opinion he might have offered regarding causation of the school bus fire – after a review of his affidavit, a rebuttal affidavit by Clement's expert, and a summary judgment hearing. At the hearing, counsel for the plaintiffs argued that "Dr. Forbes has not been given an opportunity to further expound" upon his scientific theory as to causation.

¶7.     As we noted in *Edmonds v. State*, 955 So. 2d 787, 792 (Miss. 2007), "the basic requirement under the law is that the parties have an 'opportunity to be heard before the [trial] court makes its decision.'" *Id.* (quoting *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 n. 3 (8th Cir. 2003)). Our inquiry must therefore determine whether the parties had an opportunity to be heard. Because we are still developing our analysis of expert testimony after adopting the *Daubert* standard, we will look to other jurisdictions for guidance on this issue.[2]

---

[2]The dissent cites *Sheffield v. Goodwin*, 740 So. 2d 854 (Miss. 1999), and *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346 (Miss. 1990), in support of its arguments. However, those cases were decided previous to our adoption of a revised M.R.E. 702 in 2003 and do not impact the post-*Daubert*-centered analysis of the opportunity of

3

¶8.    "[I]n limine hearings are generally recommended prior to *Daubert* determinations."

***Group Health Plan, Inc. v. Philip Morris USA, Inc.***, 344 F.3d at 761 n. 3 (8th Cir. 2003)

(quoting ***Padillas v. Stork-Gamco, Inc.***, 186 F.3d 412, 418 (3d Cir. 1999)).    In limine

hearings are also the "most efficient procedure" a trial court can use when presented with

complex evidence.  ***United States v. Downing***, 753 F.2d 1224, 1241 (3d Cir. 1985).

¶9.    An in limine hearing regarding expert testimony is also a cautious approach best

suited for the comparable complexities of our post-***Frye*** Rule 702.  Perhaps before ***Daubert***,

such a determination could be made without a hearing, but the continual evolution of science

and the growing intricacies of litigation mandate that we take the trial court's role as

"gatekeeper" seriously. *See* ***Knight v. Kirby Inland Marine Inc.***, 482 F.3d 347, 355 (5th Cir.

2007) (trial "courts have an important role as gatekeepers in determining whether to admit

expert testimony").  Therefore, the trial "courts must *carefully analyze* the studies on which

experts rely for their opinions before admitting their testimony."  ***Id.*** (emphasis added).  A

hearing is simply the best method of guarding the admission of expert testimony.

¶10.    Yet as ***Edmonds*** noted, in *some* cases "a court is not required to hold an actual hearing

to comply with ***Daubert.***" ***Id.*** (quoting ***Greenwell v. Boatwright***, 184 F.3d 492, 498 (6th Cir.

1999)).  Common sense informs us that in some cases an expert may be drastically unsuited

to testify; for example, for a lack of standing within the proffered field or a discredited

background.  Yet that lack of a formalized inquiry must be balanced with some other

---

parties to be heard regarding their proffer of expert testimony.

4

"opportunity to be heard" for the parties. Several federal circuits have addressed the issue when district courts have refused to hold a *Daubert* hearing.

¶11.    In one Eighth Circuit case where there was no hearing, the parties were still afforded an "an adequate opportunity to be heard " because they "were allowed to exceed the normal page limits in their briefs on [the] motion for summary judgment, and the district court permitted [the nonmovant] to present written submissions by [its expert] and other experts in support of their argument." *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 (8th Cir. 2003).

¶12.    Similarly, in one Sixth Circuit case, *Nelson v. Tennessee Gas Pipeline Co.*, a district court did not conduct a *Daubert* hearing. *Nelson*, 243 F.3d 244, 249 (6th Cir. 2001), *cert. denied*, 534 U.S. 822, 122 S.Ct. 56, 151 L.Ed.2d 25 (2001).  However, there was an opportunity to be heard because "[t]he admissibility of the testimony of [the experts] under *Daubert* was fully briefed by the parties," and "it [was] clear from the extensive record and the magistrate judge's opinion that there was an adequate basis from which to determine the reliability and validity of the experts' opinions." *Id.*

¶13.    The First Circuit examined the problems with pulling the trigger early on *Daubert*, noting that "[t]he fact that *Daubert* can be used in connection with summary judgment motions does not mean that it should be used profligately." *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).  "[G]iven the complex factual inquiry required by *Daubert*, courts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record," and so the First Circuit concluded that "[b]ecause the summary judgment process does not conform well to the

5

discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Id.*

¶14.   Unlike the fact pattern in *Edmonds* or the cases cited above, the parties in the case at hand did not have "an opportunity to be heard" regarding their expert testimony. Ultimately, while "[t]o exclude evidence is within purview of the court . . . determinations to exclude evidence before the challenging party has an opportunity to develop the record are unfair and improper." *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 611-12 (D. Del. 2007) (internal quotation and citation omitted). Therefore, the affidavit of Dr. Forbes was improperly struck by the trial court, and the order granting summary judgment regarding the causation of the school bus fire was also in error.

¶15.   Prior to any *Daubert* determination or other decision regarding the proffer of expert evidence, the parties must be afforded the opportunity to be heard. We generally recommend that the trial court conduct an in limine hearing specifically on the subject, as this procedure will result in full briefing and argument by the parties regarding the proposed expert testimony. This will not only assist the trial court in its function as evidentiary gatekeeper; it will provide a fuller record for an appellate court should the parties contest the evidentiary ruling. While an in limine hearing may not be necessary in all cases, it does provide the most efficient manner of addressing the issue in many cases.

**Conclusion**

¶16.   Because the Amory School District was not allowed an opportunity to be heard as contemplated by M.R.E. 702 and *Daubert*, we reverse the trial court's order striking the affidavit of Dr. Forbes. Accordingly, we also reverse the trial court's grant of summary

6

judgment to Clement on the subject of causation. We remand the case for proceedings that will provide the parties with the opportunity to be heard.

¶17.   **REVERSED AND REMANDED**.

**WALLER, P.J., EASLEY AND GRAVES, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT. SMITH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, DICKINSON AND LAMAR, JJ.**

**SMITH, CHIEF JUSTICE, DISSENTING:**

¶18.   In my view, the trial court properly struck the appellant's expert affidavit during the summary judgment hearing as it did not comply with the two-prong test set out in ***Mississippi Transportation Commission v. McLemore***, 863 So. 2d 31, 34 (Miss 2003). The expert's affidavit was inadmissible because it was mere unsupported speculation, subjective belief and conclusions without any basis provided by reliable scientific methods and procedures. The majority departs from a consistent precedent established by ***McLemore***, 863 So. 2d 31, 35 (Miss. 2003); ***Edmonds v. State***, 955 So. 2d 787, 791-92 (Miss. 2007); ***Webb v. Braswell***, 930 So. 2d 387, 396-97 (Miss. 2006); ***Hubbard v. Wansley***, 951 So. 2d 951, 954-56 (Miss. 2007); ***Sheffield v. Goodwin***, 740 So. 2d 854, 856 (Miss. 1999); and ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1357 (Miss. 1990). Accordingly, I dissent.

¶19.   When determining the admissibility of evidence, including expert testimony, the court is bound by an abuse-of-discretion standard of review. ***Webb,*** 930 So. 2d at 396-97 (citing ***McLemore***, 863 So. 2d at 34). "The trial judge assumes the critical role as a gatekeeper in assessing the value of the testimony." ***Webb***, 930 So. 2d at 397. "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest

7

possible discretion," ***Sheffield***, 740 So. 2d at 856 (citing ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d at 1357), and the decision of the trial judge will stand unless this Court concludes "that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion," ***McLemore***, 863 So. 2d at 34. "Such discretion deserves equal respect at the summary judgment stage and the trial stage." ***Sheffield***, 740 So. 2d at 856 (citing ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d at 1357).

¶20. The majority holds that the ***Daubert*** standard of admissibility was erroneously applied to Forbes's affidavit. I disagree. The first question is two-fold: (1) to what standard must Forbes's affidavit be held for admissibility as an expert opinion; and (2) whether Forbes's affidavit met such requirements.

¶21. M & W filed a motion for summary judgment, and Appellants responded with the affidavit of their expert Dr. Forbes. Evidence submitted for summary-judgment consideration must "set forth facts as would be admissible in evidence." M.R.C.P 56(c). Mississippi Rule of Evidence 702 provides the qualifications for admissibility of expert testimony. Rule 702 states:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

M.R.E. 702. Additionally, in 2003, Mississippi adopted the modified ***Daubert*** standard for determining admissibility of expert witness testimony under Rule 702. ***McLemore***, 863 So. 2d 31. "When determining admissibility of expert testimony, courts must consider whether

8

the expert opinion is based on scientific knowledge (reliability) and whether the expert opinion will assist the trier of fact to understand or determine a fact in issue (relevance)." *Edmonds*, 955 So. 2d at 791 (citing *McLemore*, 863 So. 2d at 38; M. R. E. 702). This standard applies equally to all types of expert testimony — scientific and otherwise. *McLemore*, 863 So. 2d 31 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147; 119 S. Ct. 1167; 143 L. Ed. 2d 238 (1999)).

¶22.    Dr. Forbes's affidavit was provided, according to Appellants, to address the issue of "whether the copper tubing that M & W installed in 1981 is the same copper tubing that was on the bus in 1995." In the affidavit, Dr. Forbes stated:  "The fire occurred due to an improperly flared copper tubing, which in my opinion was defective when originally flared." He further stated: "It is my opinion that the copper tubing originally flared by M & W Gas Company in 1981 is the same copper tubing which was on School Bus No. 19 in 1995 at the time of the fire."

¶23.    M & W moved to strike Forbes's testimony due to its failure to meet the reliability requirement in M.R.E. 702 that "the testimony is the product of reliable principles and methods." M & W attached to its motion the affidavit of its own expert, Derek T. Nolen, a mechanical engineer who attested to having "extensive training in explosion and fire analysis of liquefied  propane gas, mechanical systems and component failure analysis." Nolen examined Amory School District Bus No. 19, reviewed maintenance records from July 23, 1992, to March 9, 1995, and parts invoices from August 26, 1991, to December 11, 1992, and reviewed Forbes's affidavit. From his examinations Nolen opined that since the copper tubing lacked identifying marks, "there are  no reliable, or valid, scientific principles or

methods that could be utilized by any engineer, or any other specialist, that would enable that person to give an opinion based in science regarding from what manufacturer or seller the copper tubing or brass fittings. . . came, the age of the tubing and fittings, the date that the tubing and fittings were installed, or the date that the tubing was flared and by whom it was flared." Nolen concluded that the only possible reliable means of determining the identity, age and date of installation of the copper tubing would be to construct an exact chain-of-custody for the fourteen years between the 1981 installation of the original propane system and the May 23, 1995, incident at hand. However, Nolen subsequently stated that, based on his review of the records, sufficient data would not exist to accurately identify all the necessary persons to form an opinion based in science. Forbes provided no response.

¶24. Citing to *McLemore*, M & W directed the trial court to the plaintiffs' failure to "show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation." *McLemore*, 863 So. 2d at 35 (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-594; 113 S. Ct. 2786; 125 L. Ed. 2d 469 (1992). M & W further argued that mere conclusions which are "devoid of factual bases" do not meet the expert opinion criteria, citing *Palmer v. Biloxi Reg. Med. Ctr.*, 564 So. 2d 1346, 1358. The trial court agreed with M & W. In granting M & W's motion to strike Forbes' affidavit, the trial court, citing *McLemore*, found that "the opinions expressed by Dr. Forbes in his affidavit are nothing more than unsupported conclusions which are devoid of a factual basis and not the product of reliable principles and methods, and therefore, fail to meet the standards for admission of expert testimony under M.R.E. 702."

¶25. In *Edmonds*, this Court considered the State's expert's opinion, based on observation in an autopsy, of causation of the victim's fatal wound. *Edmonds*, 955 So. 2d at 791. The expert testified that the wound was caused by two shooters as opposed to a single shooter.[3] *Id.* This Court agreed with the defendant's argument that "such testimony was scientifically unfounded: 'You cannot look at a bullet wound and tell whether it was made by a bullet fired by one person pulling the trigger or by two persons pulling the trigger simultaneously.'" *Id.* at 792. The Court held that the testimony should have been excluded on the grounds that the

[3]The pertinent portion of the examination went as follows:

Q: Dr. Hayne, you testified earlier that the defendant's statement that you saw was consistent with how the gunshot wound occurred?

A: It would be consistent with the physical findings that I observed and the information provided to me by opposite side counsel.

Q: And do you understand that the evidence is that two people fired that shot?

A: That was essentially the summary of the information given to me and seen on the video.

Q: And let's suppose if one person had fired that shot, would your opinion be the same?

A: I could not exclude that; however, I would favor that a second party be involved in that positioning of the weapon . . . it would be consistent with two people involved. I can't exclude one, but I think that would be less likely. . . .

Q: Are the injuries Mr. Fulgham sustained consistent within a reasonable degree of medical certainty with the defendant's version of how he was shot?

A: They are consistent within reasonable medical certainty.

*Edmonds*, 955 So. 2d at 791-92.

State did not show that its expert's testimony was based on reliable methods or procedures, and therefore, the testimony did not meet our standards for admissibility. *Id.*

¶26.    Here, the trial court similarly found that Dr. Forbes's testimony did not meet our standards of admissibility.  Mississippi Rules of Evidence 702 provides that one of the requirements for admissibility of expert testimony is that "the testimony is the product of reliable principles and methods." Dr. Forbes's affidavit solely puts forth unsupported speculation, subjective beliefs and conclusions – that the tubing on School Bus 19 which caused the fire was defective and that this tubing on the bus at the time of the fire in 1995 was the same tubing as was on the bus in 1981. Such conclusions are akin to those given by the expert in *Edmonds*.

¶27.    Appellants also argue that the trial court should have held a hearing as it was the only appropriate means for review of the reliability of the expert's opinions and in which the Appellants' expert could have had an opportunity to respond to the admissibility issues M & W raised. Thus, the second question is whether the trial court abused its discretion in not providing a *Daubert* hearing before striking the affidavit.

¶28.    This Court previously has deemed proper the striking of an expert's testimony without a *Daubert* hearing. In *Edmonds*, the Court discarded the assertion of the necessity to hold a *Daubert* hearing. "As the United States Supreme Court has stated, 'The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.'" *Edmonds*, 955 So. 2d at 791-92 (quoting *Kumho Tire*, 526 U.S. 137, 152 (emphasis in

12

original)). Admittedly, *Daubert* hearings may be necessary in some cases. *Id.* (quoting *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006)). However, the essential requirement is that the parties have an opportunity to be heard before the trial court makes a decision. *Id.* A court need not hold an actual hearing in order to comply with *Daubert*. *Edmonds*, 955 So. 2d at 792 (citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001)). As for the provision of an opportunity for the defendant to fully defend its expert's opinion without a *Daubert* hearing, this Court stated in *Edmonds*: "After the defense requested a *Daubert* hearing, both counsel approached the bench and gave a brief argument. Therefore, the defense had an opportunity to be heard. . . ." *Id*. at 793. Without a hearing, this Court held that the circuit court should have excluded the testimony. *Id.*

¶29.    Further, upon the conclusion that the expert opinion is inadmissible, the trial court may exclude the testimony before trial, including during a summary judgment hearing, which is exactly what occurred in the case at bar.   In *Webb*, this Court affirmed the exclusion of expert testimony on future damages as speculative during summary judgment. *Webb*, 930 So. 2d at 398. The expert was to testify to future damages of lost profits. *Id.* at 397. However, in bringing the testimony, the Webbs failed to establish that they were running a profitable business prior to the alleged damage. *Id.* at 398. The trial court found during summary judgment that the testimony failed the reliability prong of *Daubert*, and this Court affirmed the trial court's finding. *Id.* Clearly, a trial court may exclude expert testimony without providing a *Daubert* hearing. *See Hubbard v. Wansley*, 951 So. 2d 951, 954, 956 (Miss. 2007) (affirming exclusion of expert testimony as inadmissible at summary judgment); *Sheffield*, 740 So. 2d at 856 (affirming exclusion of expert affidavit as inadmissible at

13

summary judgment); ***Palmer v. Biloxi Reg. Med. Ctr.***, 564 So. 2d at 1358 (affirming exclusion of expert testimony during summary judgment since the opinions were "mere conclusions devoid of factual bases" where the expert failed to produce the basis for his opinion during his deposition or attached to his affidavits filed in opposition to the motion for summary judgment).

¶30. Upon providing an opportunity for both sides to be heard and finding the expert testimony inadmissible according to M.R.E. 702 and the modified ***Daubert*** standard, the trial court may exclude the expert testimony. In the case at bar, Appellants had an opportunity to be heard. M & W moved to strike Dr. Forbes's affidavit, which provided an opportunity for M & W to voice its arguments concerning the expert testimony. Appellants could have filed a response to the motion to strike Dr. Forbes's affidavit but failed to do so. Additionally, during the hearing in which the court simultaneously considered the motion for summary judgment and the motion to strike, Appellants could have offered argument as to how their expert's testimony was supported by reliable principles and methods, but they did not. Such opportunities to present arguments to the court are akin to each counsel's opportunity to make a brief argument during trial in ***Edmonds***. Between May 4, 2005, when M & W filed the motion to strike Dr. Forbes's affidavit and the hearing on October 19, 2005, Appellants failed to provide evidence or argument of the basis for Dr. Forbes's conclusion that the copper tubing M & W installed on Bus. No. 19 was the same copper tubing on the bus at the time of the fire.

¶31. Both parties having been afforded the opportunity to make arguments concerning the sufficiency of Dr. Forbes's affidavit, the issues were fully developed and argued to the trial

14

court during a motion for summary judgment hearing. Further, this Court finds that the trial court did not apply the standard of admissibility in an arbitrary or clearly erroneous manner. Forbes and Appellants provided *only* conclusions, failing to provide a basis for those conclusions. That failure places Appellants in noncompliance with the requirement of M.R.E. 702, which requires for admissibility that expert testimony is the product of reliable principles and methods. Accordingly, the striking of Dr. Forbes's affidavit did not amount to an abuse of discretion by the trial judge. I respectfully dissent.

**CARLSON, DICKINSON AND LAMAR, JJ., JOIN THIS OPINION.**