IRVING, J,
 

 for the Court.
 

 ¶ 1. Gigi Kilhullen sued Kansas City Southern Railway (KC Southern) and Robert Lay (collectively, the Appellees), alleging that they caused the wrongful death of her husband, Thomas Kilhullen. Following discovery, the Scott County Circuit Court granted summary judgment on behalf of the Appellees. Aggrieved, Kilhullen appeals and asserts that the court erred (1) in rejecting the affidavit of Jimmy Shelton, whom Kilhullen offered as a lay witness; (2) in rejecting the affidavit of Jimmy Hal-facre, an engineer hired by Kilhullen; (3) in rejecting the affidavit of Brett Alexander, an accident reconstructionist hired by Kilhullen; (4) in granting KC Southern and Lay’s motion for summary judgment, and (5) in setting out a schedule for discov
 
 *188
 
 ery that allowed the Appellees to conduct discovery while Kilhullen could not.
 

 ¶ 2. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. On June 20, 2000, Thomas, a tractor-trailer operator, had just picked up a load at International Paper Company’s plant in Morton, Mississippi, when he proceeded south on Herring Road away from the plant. As Thomas proceeded south to a nearby railroad crossing, over the railroad tracks, he was hit by a KC Southern train operated by Lay, an engineer. Thomas died from his injuries.
 

 ¶ 4. Lay stated that he blew the train’s whistle repeatedly and put the train “in emergency” in an attempt to avoid the accident. Only one non-party eyewitness, Classie Ward, is known to exist. Ward stated in an affidavit that she observed Thomas moving very slowly over the railroad tracks. In Ward’s opinion, Thomas should have been able to see the train and should have been able to avoid the accident by not passing over the railroad tracks in question.
 

 ¶ 5. On December 4, 2001, Kilhullen filed suit against the Appellees, alleging that they allowed the line of sight at the crossing to become obstructed.
 
 [1]
 
 Discovery was conducted by all parties, and several continuances were ordered. On October 22, 2004, the Appellees filed a motion for summary judgment, alleging that Kilhullen had failed to raise a genuine issue of material fact. Shortly thereafter, Kilhullen noticed the depositions of seventeen different individuals. Pursuant to the notice, Kil-hullen filed a motion to hold the motion for summary judgment in abeyance due to the outstanding depositions. On the day before the scheduled summary judgment hearing, Kilhullen produced affidavits from Shelton and Halfacre in opposition to the motion for summary judgment.
 

 ¶ 6. On November 19, 2004, Kilhullen filed a motion to compel discovery from the Appellees. The Appellees filed a motion to strike the motion to compel on December 7, 2004, arguing that Kilhullen had not made a good faith effort to resolve the discovery issues before filing the motion to compel. The same day, the Appel-lees filed a motion to quash Kilhullen’s attempt to take the depositions of the seventeen noticed witnesses. On December 15, the Appellees filed a reply in further support of their motion for summary judgment and a motion to strike Shelton’s affidavit on the ground that he was not offering a lay opinion. On January 3, 2005, Kilhullen filed a response to the motion to strike the affidavit, arguing that Shelton was indeed testifying as a lay witness. On January 5, 2005, the court held a hearing but did not finally rule on the motion for summary judgment.
 

 ¶ 7. On January 25, 2005, the court put a moratorium on any further discovery in the case, with the exception that the Ap-pellees could depose Halfacre and Shelton, whose identities had been disclosed only in response to the motion for summary judgment. The court also held the motion for summary judgment in abeyance pending a hearing on whether Shelton and Halfacre’s affidavits were admissible. Despite the court’s moratorium, on August 19, 2005, Kilhullen’s attorney informed the Appel-lees that Kilhullen had another witness, Alexander, an accident reconstructionist whose opinion would be offered to bolster
 
 *189
 
 Halfacre’s findings. An affidavit from Alexander was filed on April 20, 2006.
 

 ¶8. After a hearing in June 2006, the trial court rendered a final opinion disposing of both the discovery issues and the motion for summary judgment, which the court found were “inextricably joined or intertwined.” The court found that Shelton’s and Halfacre’s affidavits were inadmissible because neither was qualified to render an opinion under
 
 Daubert v. Merrell Dow Pharmaceuticals,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court also found that Alexander’s affidavit was inadmissible. Accordingly, the court found that there was no genuine issue of material fact and granted summary judgment on behalf of the Appellees. In its opinion, the court erroneously stated that Lay, the engineer who drove the train, was the only eyewitness to the accident. In reality, the accident was also witnessed by Ward, who was near enough to the railroad crossing to observe what happened.
 

 ¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Admissibility of Shelton’s Affidavit
 

 ¶ 10. Kilhullen argues that Shelton’s affidavit was admissible as the opinion of a lay witness. Rule 701 of the Mississippi Rules of Evidence governs the admissibility of lay witness testimony:
 

 If the witness is not testifying as an expert the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c)
 
 not based on scientific, technical, or other specialized knowledge
 
 within the scope of Rule 702.
 

 (Emphasis added).
 

 ¶ 11. Shelton’s opinion was not admissible as lay testimony because it was based on “scientific, technical, or other specialized knowledge.” Essentially, Shelton’s opinion was that of an expert, except that he was not qualified as such. To illustrate, we quote at length from Shelton’s affidavit:
 

 My name is Jimmy Shelton. I was reared and attended school in Leake County, Mississippi. I am employed as a paralegal and investigator with the Gilmer Law Firm and have been so employed since April, 2002.
 

 * # * * *
 

 I have visited the site of the accident on two occasions. I have observed three trains traveling over the subject grade crossing. I positioned myself fourteen feet from the railroad track headed south on Herring Road. The line of visibility to the east along the railroad track at which time one could first possibly visualize the oncoming train is
 
 approximately three hundred seventy-five feet from the crossing.
 
 I observed numerous vehicles such as compact and full size automobiles, pick-up trucks, school buses and other vehicles cross the tracks after coming to a complete stop. Said vehicles
 
 required a minimum of six seconds and a maximum of eight seconds to cross the tracks operating under usual conditions.
 

 The railroad tracks are eighteen feet in width at the crossing and the tracks run in an east and west direction. The railroad guard device which lowers as the train approaches is situated fourteen feet from the nearest track.
 
 Herring Road crosses the railroad track at approximately a seventy degree angle. If
 
 
 *190
 

 the tractor trailer rig driven by Mr. Kilhullen stopped two feet to the north of this railroad guard device, then Mr. Kilhullen’s head would have been situated approximately twelve feet north of the guard device. Given that Mr. Kil-hullen’s seat of his truck was five feet off the ground at the position of his truck at the crossing, his line of sight was approximately three hundred seventy-five feet to the point he could have first seen the locomotive with vegetation presently cleaned from the area. The original photographs taken immediately after the accident show vegetation at the point his line of sight would have allowed him visibility of the oncoming train. Therefore his visibility was materially shortened to a distance of less than three hundred seventy-five feet.
 

 I observed an empty school bus come to a full stop and cross the railroad tracks which required a total of eight seconds and a second empty school bus which required seven seconds to cross the tracks. The Kilhullen tractor trailer rig exceeded fifty feet long loaded with lumber and would require in excess of eight seconds such as the school bus to completely cross the subject railroad tracks.
 
 Considering that the admitted speed of the train was fifty miles per hour which constitutes seventy three and one third feet per second and considering the point that Mr. Kilhullen could first see the front of the locomotive of the train, he would have had approximately five seconds to move the tractor trailer rig across the tracks.
 

 Simple arithmetic calculations commonly learned by junior high and high school children allow a lay person to make the elementary calculations and draw the proper conclusions of the movement of Mr. Kilhullen’s truck and the speed of the train. I am an experienced truck driver having operated tractor trailer rigs hauling farm equipment and other heavy equipment. Considering that the Kilhullen rig was fully loaded with lumber and his rig was approximately fifty feet long, the front bumper of his truck was approximately two feet from the guard device (sixteen feet from the north track), the distance from the guard device to the north side of the tracks is fourteen feet and the distance from the north side of the tracks to the south side of the tracks is eighteen feet,
 
 then Mr. Kilhullen’s rig would have to move from a dead stop to a distance of eighty-six feet in order to completely clear the south side of the track. In my years of experience of operating tractor trailer rigs and heavy equipment this would require at least fourteen seconds. Therefore, considering the train was traveling at fifty miles per hour (seventy three and one third feet per second) and Kilhullen’s first possible visual contact was at three hundred seventy-five feet, it would have been impossible for Kilhullen to move his truck across the tracks and clear the tracks before being struck by the train.
 

 H* *!' ^ "i*
 

 The grade crossing is elevated approximately ten feet as compared to the railroad track running to the east. This further obscures the visibility of an oncoming locomotive and train.
 

 (Emphasis added).
 

 ¶ 12-. As can be seen from Shelton’s affidavit, his opinion was based entirely on mathematical formulae and measurements. Presumably, they are the same measurements and formulae that an experienced accident reconstructionist would use to render his conclusions. Shelton, however, has no training or expertise as an accident reconstructionist. While some high school students might be able to work through
 
 *191
 
 the formulae, they would be as unqualified as Shelton to render an expert opinion based on those formulae. A lay witness is someone who offers opinion testimony regarding something they know from firsthand knowledge, not something they concluded from applying technical formulae. Shelton clearly was not offering a lay opinion, nor was he qualified to render an expert opinion. Therefore, his affidavit was properly excluded by the court.
 

 ¶ 13. This contention of error is without merit.
 

 2. Half acre’s Affidavit
 

 ¶ 14. Kilhullen contends that the court was in error for finding that Halfa-cre’s opinion was inadmissible. The admissibility of an expert witness’s testimony is governed by Rule 702 of the Mississippi Rules of Evidence, which states that a relevant expert who is “qualified as an expert by knowledge, skill, experience, training, or education” may testify if: “(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.”
 

 ¶ 15. Questions regarding the admission of expert testimony are left to the discretion of the trial court.
 
 Giannaris v. Giannaris,
 
 960 So.2d 462, 469(¶ 14) (Miss.2007). We will not reverse the court’s decision unless there was an abuse of discretion such that the decision was “arbitrary and clearly erroneous....”
 
 Id.
 
 (quoting
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 34(¶ 4) (Miss.2003)). According to
 
 Daubert,
 
 which the Mississippi Supreme Court adopted in
 
 McLemore,
 
 “[t]he trial court is vested with a ‘gatekeeping responsibility.’ ”
 
 McLemore,
 
 863 So.2d at 36(¶ 11) (quoting
 
 Daubert,
 
 509 U.S. at 589, 113 S.Ct. 2786).
 

 ¶ 16. During his deposition, after being asked about his areas of expertise, Halfa-cre stated:
 

 I’m not representing myself as being proficient in any of the areas that you mentioned.
 
 I’m not an accident recon-structionist. I am not a street designer, railroad designer or any of the above.
 
 My involvement in this is limited specifically to looking at time and distance measurements and doing a calculation on what two bodies, in this case a train and truck, would travel in a given and specified length of time and comparing that time distance to the measured field of vision. That’s the only two components that I am — consider myself appropriate to testify to.
 

 (Emphasis added). Halfacre then stated unequivocally that he was not qualified to render an opinion as an accident recon-structionist. He also stated that the manual he used to determine which formulae to use was titled “Train Accident Reconstruction Manual.”
 

 ¶ 17. Halfacre was not qualified to offer an expert opinion in this matter. While he was an engineer, his education was in electrical engineering and the majority of his experience was in conducting home inspections. On his résumé, Halfa-cre stated: “I am in private practice as a Registered Professional Engineer. I do consulting in the area of building science and light structure. As such, I inspect, evaluate, write and oversee repair/remediation of buildings and foundation systems.” Nowhere did Halfacre claim any knowledge of accident reconstruction or the methods and formulae normally used therein. In order to render an expert opinion, an expert must be “qualified as an expert by knowledge, skill, experience, training, or education.” Had Halfacre’s opinion concerned electrical engineering or home inspections, he would likely have
 
 *192
 
 been qualified to render his opinion. However, Halfacre’s testimony rendered opinions regarding very specific details of how a particular accident occurred, including how much time Thomas had to move his truck across the subject railroad tracks given the speed of the train, the length of Thomas’s truck, and the speed of Thomas’s truck. Such testimony, regardless of Kilhullen’s arguments to the contrary, are clearly an attempt at accident reconstruction. Halfacre had no experience or training whatsoever regarding accident reconstruction, as he admitted during his deposition. Therefore, Halfacre was not qualified to render the expert opinion in question. We cannot find that the court abused its discretion when it refused to admit Halfacre’s opinion.
 

 ¶ 18. As support, Kilhullen cites numerous cases where she claims “civil” engineers like Halfacre were ruled as qualified to render an accident reconstruction opinion. Kilhullen first cites
 
 Illinois Central Railroad Co. v. Hawkins,
 
 880 So.2d 1162 (Miss.2002). However, in
 
 Hawkins
 
 there was no issue made of whether the civil engineer in that case was qualified to render an accident reconstruction opinion; therefore, it is impossible for this Court to know whether the engineer in that case had any special knowledge or training that qualified him to render his opinion. Presumably he did, since the court allowed him to present expert testimony.
 
 Id.
 
 at 1178 (¶ 39).
 
 Hawkins
 
 is of no help to Kilhullen.
 

 ¶ 19. Kilhullen next cites
 
 Bowman v. CSX Transportation, Inc.,
 
 931 So.2d 644 (Miss.Ct.App.2006), wherein one engineer who did not have any experience with railroad grade engineering was allowed to testify, and another engineer who had experience only with teaching courses regarding railroad grades was allowed to testify. Id. at 656-57 (¶¶ 44-47). Nothing in the
 
 Bowman
 
 opinion suggests that either engineer had no training or experience whatsoever regarding accident reconstruction or trains, as is the case here. Clearly,
 
 Bowman
 
 is distinguishable from the present case.
 

 ¶20. Kilhullen also cites
 
 Illinois Central Gulf Railroad Co. v. Milward,
 
 902 So.2d 575, 578(¶ 14) (Miss.2005), contending that a civil engineer was allowed to testify in that case regarding “the safety of a railroad crossing.” While this is true, the engineer in that case listed his “fields of consultation in transportation” as: “highway safety, highway design, traffic engineering, accident reconstruction and human factors related to those things. He also consulted in the field of railroad crossing operation.”
 
 Id.
 
 at 578(¶ 14). From the opinion, it appears as though the expert had previously testified in the relevant fields and had experience in those fields. Regardless, the engineer’s qualifications were not addressed on appeal, and in the absence of any evidence that he, like Halfacre, had no training or experience whatsoever in accident reconstruction or train safety, we must conclude that he had such experience in order to be qualified as an expert.
 
 Milward
 
 is also of no help to Kilhullen.
 

 ¶ 21. Kilhullen also cites a number of cases from other jurisdictions. Such cases would not constitute binding authority on this Court, and for expediency’s sake, we do not go into any of the cases in detail. Suffice it to say that a review of the cases has revealed that they are also of no help to Kilhullen. Although most of the cases involve individuals who are civil engineers, we note that it is not Halfacre’s title that is the problem. If Halfaere were a civil engineer with extensive training or experience regarding accident reconstruction or train safety, he likely would have been qualified to render the opinion that he did. Howev
 
 *193
 
 er, Halfacre had no experience in any field relevant to his opinion. Nothing Kilhullen has presented indicates that the court abused its discretion in denying Halfacre’s affidavit.
 

 ¶ 22. Additionally, some of Halfacre’s answers during his deposition bring into question the accuracy of his conclusions. For example, Halfacre testified that he did not know what type of train was involved in the subject accident, nor the height of the train. Halfacre also stated that he did not know at what height Thomas was seated when he was killed. Furthermore, Hal-facre testified that he did not know what sort of lights were on the train, nor where any such lights were located. Although Halfacre testified that he believed the line of sight from left to right was more important than the vertical line of sight, he admitted that there was some slope involved but “that the elevations of the track were not as relevant as ... was the line of sight ... looking toward the east....” However, even with regard to the horizontal line of sight, Halfacre admitted that he did not do any calculations that would take into account Thomas’s increasing line of sight as he moved toward the railroad tracks. Rather, Halfacre stated that all of his measurements assumed that Thomas was fifty feet from the tracks.
 

 ¶ 23. Halfacre also testified that he did not take into account any braking done by the train after the engineer observed Thomas on the tracks. It is undisputed that Lay attempted to slow the train after seeing Thomas. Furthermore, Halfacre admitted that he had no idea exactly how heavy a load Thomas was carrying on his truck, the state of Thomas’s brakes, nor how long it would have taken Thomas to come to a complete stop. As all of these facts-vertical line of sight, horizontal line of sight, placement of any lights, and any braking done by the train or Thomas-would be essential in understanding what line of sight Thomas had and whether Thomas could have safely avoided the train, it is unclear how Halfacre was able to formulate his conclusions without this data. These deficiencies further support the court’s decision to rule Halfacre’s opinion inadmissible.
 

 ¶ 24. This contention of error is also without merit.
 

 3. Alexander’s Affidavit
 

 ¶ 25. Alexander’s affidavit was offered to prove that Halfacre’s conclusions were correct. Essentially, Alexander reevaluated the relevant data and formulae and confirmed that he reached the same conclusions as Halfacre. Kilhullen offers little legal authority for her contention that Alexander’s affidavit should have been considered by the court. However, she does contend that Alexander’s affidavit was timely filed because the court had delayed a final hearing on the Appellees’ summary judgment motion pending the outcome of the court’s
 
 Daubert
 
 hearing. Thus, Kilhullen contends that, under Rule 56(c) of the Mississippi Rules of Civil Procedure, she had until the day before the final hearing to file affidavits.
 

 ¶ 26. After the first summary judgment hearing, the court delayed ruling until after it had addressed the admissibility of Kilhullen’s expert witnesses. Because the
 
 Daubert
 
 issues were crucial to the court’s determination of summary judgment, the second hearing addressed both the admissibility of the affidavits and whether summary judgment should be granted. Although the second hearing addressed the propriety of summary judgment, the only new information to be addressed at the hearing was the admissibility of Kilhullen’s expert witnesses. Any actual facts in support of summary judgment should therefore have been submitted prior to the Jan
 
 *194
 
 uary 2005 summary judgment hearing. After the January 2005 hearing, the court put a moratorium on any further discovery. Under the circumstances, as we will discuss in more detail later, we cannot find that that decision was in error. Therefore, Alexander’s affidavit was admissible only in support of Kilhullen’s
 
 Daubert
 
 arguments, if at all.
 
 [2]
 

 ¶ 27. Kilhullen contends that Alexander’s affidavit was admissible to show the validity of Halfacre’s conclusions. We find that the court correctly ruled regarding this use of Alexander’s affidavit, as Alexander did not offer any opinion as to Halfacre’s qualifications or expertise. As we have discussed, Halfacre’s opinion was inadmissible because he was not qualified in the field in which he was attempting to tender an opinion. Alexander’s affidavit did nothing to remedy that situation.
 

 ¶ 28. This contention of error is also without merit.
 

 h- Propriety of Summary Judgment
 

 ¶ 29. Since we have found that Kilhul-len’s proposed affidavits were properly rejected by the court, we also find that summary judgment was properly entered against Kilhullen. Kilhullen presented no other evidence to raise a genuine issue of material fact. Where no genuine issue exists, summary judgment is properly granted. M.R.C.P. 56(c). When reviewing the propriety of summary judgment, we conduct our review de novo.
 
 Jackson Clinic for Women, P.A. v. Henley,
 
 965 So.2d 643, 649(¶ 11) (Miss.2007).
 

 ¶30. The court properly denied the proffered opinions of Shelton, Halfacre, and Alexander; and Kilhullen offered no further proof regarding whether the line of sight at the track was obstructed. Furthermore, Kilhullen has offered no proof regarding Thomas’s failure to observe the train’s whistle before he began his attempt to cross the tracks. It is uncontradicted that Lay, the engineer who operated the train that hit Thomas, sounded the train’s horn repeatedly before he collided with Thomas. Lay testified that he began sounding the whistle at the appropriate whistle board, meaning that Thomas should have had notice of the train well before it came into his line of sight. Kil-hullen has offered nothing to explain why the train’s whistle was insufficient to prevent Thomas from attempting to cross the railroad tracks as the train approached.
 

 ¶ 31. Additionally, the affidavits did not establish what would have happened had Kilhullen attempted to stop rather than attempt to cross the train tracks in front of the train. As stated by Halfacre, Thomas did not have time to clear the tracks starting from a position fifty feet from the tracks. Nothing in the affidavits addressed Thomas’s choice to attempt to clear the tracks in the first place. Furthermore, Ward, the only eyewitness to the accident other than Lay, stated in her affidavit that the accident was clearly Thomas’s fault due to his failure to properly check for the oncoming train before attempting to cross the tracks.
 

 ¶ 32. Kilhullen argues at length that there is a genuine issue of material fact because of Ward’s existence. To date, Kil-hullen has presented nothing to indicate that Ward would create a genuine issue of material fact in favor of Kilhullen regarding the accident. In fact, Ward’s affidavit indicates the opposite. As already discussed, she stated unequivocally that the accident was the result of Thomas’s failure
 
 *195
 
 to maintain a proper lookout for the train. Kilhullen had ample time both before summary judgment and before her appeal to this Court to produce some statement from Ward contradicting her clear statements in her affidavit, but Kilhullen has not done so. Without further proof that Ward could present a genuine issue of material fact in favor of Kilhullen, her mere existence is insufficient to prevent the entry of summary judgment.
 

 ¶ 33. Kilhullen also contends that summary judgment was improper because Halfacre’s opinion regarding the line of sight should have been sufficient to create a genuine issue of material fact. As we have already discussed, the court properly rejected Halfacre’s opinion because he was not qualified to offer it. In response to the argument that accident reconstruction testimony was not necessary in this case, we refer to our earlier points regarding the glaring holes in Halfacre’s opinion: the height of Thomas’s truck, the height of the train, the additional time that Thomas would have had as a result of the train braking, the effect that Thomas’s increasing line of sight would have had on his ability to stop, and how long it would have taken Thomas to come to a complete stop at his assumed rate of speed. Presumably, an expert qualified to render accident reconstruction testimony would have been able to address all of these factors. Halfa-cre, on the other hand, was completely unable to do so. This case cannot be disposed of by a simple calculation without taking into account the numerous other factors that had an impact on the accident. While extensive accident reconstruction testimony might not have been required to overcome summary judgment, Kilhullen still must provide testimony regarding line of sight from someone qualified to do so. As we have already found, Halfacre was not qualified to render such an opinion. Therefore, his calculations cannot serve to prevent summary judgment.
 

 ¶ 34. The court did not err in granting summary judgment to the Appellees.
 

 5. Discovery Schedule
 

 ¶ 35. Kilhullen contends that the court erred in allowing the Appellees to conduct discovery while at same time preventing her from doing so. She specifically complains of the court’s refusal to allow her to depose a number of witnesses whose depositions she sought to take in response to the Appellees’ motion for summary judgment.
 

 ¶36. We note that the court did not allow the Appellees to conduct any discovery they wanted; rather, the court put a moratorium on all discovery, except that the Appellees were allowed to depose Kil-hullen’s expert witnesses whose affidavits had just been submitted. The court did not abuse its discretion in so ordering. It appears that Kilhullen had known about the existence of all of the witnesses that she sought to depose for quite some time, but she had never sought to depose any of them. Kilhullen complains especially about her inability to depose Ward, who Kilhullen contends might have been able to provide crucial information. However, it is clear that Ward’s existence as an eyewitness was known to Kilhullen for many months before she sought to depose Ward. Furthermore, given Ward’s candid statements in her affidavit to the effect that the accident was entirely Thomas’s fault, it is doubtful that Ward’s deposition would have been of any help to Kilhullen.
 

 ¶ 37. Kilhullen points to the fact that the Appellees filed motions shortly before the motion for summary judgment wherein it was stated that “the parties are in agreement that this matter is not ready for trial.” We note that simply because a matter is not ready for trial does not auto
 
 *196
 
 matically mean that discovery is still ongoing. In fact, it appears from the record that the Appellees had concluded the majority of their discovery several months prior to filing the motion for summary judgment, and Kilhullen had not actively pursued discovery from the Appellees since sometime in mid-2002, more than two years prior to the filing of the Appel-lees’ motion for summary judgment. Kil-hullen cites several cases for the proposition that summary judgment cannot be granted when it is clear that discovery is ongoing in a case. However, since the Appellees appeared to have finished their discovery and since Kilhullen had not pursued discovery for over two years, discovery in this case appeared to have been completed prior to the court’s entry of summary judgment. While Kilhullen suddenly wanted to conduct further discovery after the filing of the motion for summary judgment, the court did not err in forbidding her to do so. Kilhullen had had ample time to conduct discovery but had chosen not to do so. This fact distinguishes her case from those she cites.
 
 See Burkhalter & Co. v. Wissner,
 
 602 So.2d 835, 838 (Miss.1992).
 

 ¶38. Under the circumstances, we do not find that the court abused its discretion in putting a moratorium on discovery. As stated by the Mississippi Supreme Court: “Our trial judges are afforded considerable discretion in managing the pretrial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases.”
 
 City of Jackson v. Presley,
 
 942 So.2d 777, 781(¶7) (Miss.2006) (quoting
 
 Bowie v. Montfort Jones Mem’l. Hosp.,
 
 861 So.2d 1037, 1042(¶14) (Miss.2003)).
 

 ¶39. This contention of error is also without merit.
 

 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.
 

 [1]
 

 . The complaint was also filed against International Paper and Illinois Central Gulf Railroad Company. Both of those parties have been released from the suit and are not parties to this appeal. The complaint also proposed several theories of negligence; however, line of sight is the only theory alleged on appeal.
 

 [2]
 

 . We also note that Alexander was not formally designated as an expert prior to Kilhullen's filing of his affidavit.