275 So.2d 381 (1973)
Mrs. Claudine C. SARPHIE
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 46994.
Supreme Court of Mississippi.
March 12, 1973.
*382 Eaton, Cottrell, Galloway & Lang, Gulfport, Duff, Foxworth & McNeese, Columbia, for appellant.
Gillespie & Lenoir, Gulfport, for appellee.
ROBERTSON, Justice:
Mrs. Claudine C. Sarphie, appellant, appeals from a judgment of the Circuit Court of the Second Judicial District of Harrison County, wherein the Circuit Court affirmed a judgment of the County Court of the Second Judicial District of Harrison County in her favor for $19,700.00. The County Court judgment was based on a jury verdict for that amount in an eminent domain suit brought by the Mississippi State Highway Commission against Mrs. Sarphie.
The Highway Commission obtained by condemnation 20.95 acres of appellant's land to be used in constructing Interstate Highway No. 10. This right-of-way runs generally in an east/west direction through appellant's 158.2 acres and consists of a strip of land approximately 598 feet wide on the west end and 398 feet wide on the east end. It will divide appellant's remaining property into two parcels, the north parcel containing 109.68 acres and the south parcel about 27.91 acres.
Julian W. Morgan, an employee of, and a witness for, the Commission, testified that the fair market value of the 20.95 acres actually taken, and, therefore, the total damages sustained by appellant, was $19,000.00. The Commission's second witness, James K. Davis, Jr., a Jackson realtor, testified that the damages to the appellant because of the taking were $19,700.00.
Mrs. Sarphie, the landowner and defendant, offered two appraisers. Will H. Davis, a Gulfport realtor, testified that the damages to Mrs. Sarphie were $77,100.00, and O.H. Burns, a Gulfport realtor, testified that just compensation would be $82,000.00.
The principal assignment of error was that the trial court erred in failing to permit the introduction into evidence of the following instrument:
 "MISSISSIPPI STATE HIGHWAY DEPARTMENT
 FAIR MARKET VALUE OFFER
 DATE: Jan. 3, 1969
 NAME: Mrs. Claudine C. PROJECT: I-10-1(11) 38
 Sarphie
 ADDRESS: Columbia, Miss. COUNTY: Harrison
 R.O.W. PARCEL(S) 1:09
 & 1:09(1)
"It is necessary that the State Highway Commission of Mississippi acquire from you certain property necessary for the construction of the above numbered project, and it is the intent of the Commission that you be offered fair market value for the property required.
"The fair market value of the parcel(s) of land referred to as parcel(s) 1:09 & 1:09(1) including all damages based on our appraisal is $40,375.00 and we hereby offer you that amount.
"This is to advise that you are entitled to receive at least 75 per cent of the appraisal before you will be required to vacate the premises regardless of the manner in which property is acquired.
 "Very truly yours,
 /s/ Charles F. Longino
 Negotiator, Miss. State Highway Dept."
*383 Neither Longino nor the appellant, Mrs. Sarphie, was offered as a witness to authenticate this written communication but the following colloquy took place between Honorable Charles R. Galloway and the County Court wherein Galloway offered Honorable Ernest Duff, a Columbia lawyer who also represented Mrs. Sarphie:
"BY MR. GALLOWAY: If it please the Court, we can offer this through the testimony of Mr. Duff, who knows the person, who he is, and will testify that it was handed to him by ... . .
"BY THE COURT: He couldn't testify, Mr. Duff, as much as I respect him, he couldn't testify that this man had the authority from the Mississippi State Highway Department to make this offer.
"BY MR. GALLOWAY: Very well, we would like then, in the absence of the jury, in order to make our record to have it included in the record together with our tender, as though the tender had been made in the presence of the jury."
The trial court was technically correct in refusing to allow the introduction of this instrument without proper authentication by the addressee or the signer.
This was a hard-fought and welltried case. There were no substantial errors made in the admission or exclusion of oral and documentary evidence. However, an eminent domain suit is a peculiar type of action where the condemnor is under a heavy and non-delegable duty and responsibility to pay the defendant landowner the full fair market value of her property.
26 Am.Jur.2d, Eminent Domain, § 1 (1966) at page 638, gives this definition:
"Eminent domain is generally defined as the power of the nation or a sovereign state to take, or to authorize the taking of, private property for a public use without the owner's consent, conditioned upon the payment of just compensation." (Emphasis added).
U.S. Constitution Amend. V provides in part:
"[N]or shall private property be taken for public use, without just compensation." (Emphasis added).
Mississippi Constitution of 1890, Section 17, states in part:
"Private property shall not be taken or damaged for public use except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; ... ." (Emphasis added).
In addition to "just compensation" and "due compensation", this Court saw fit to further define the compensation to be paid in King v. Vicksburg Railway and Light Company, 88 Miss. 456, 42 So. 204 (1906), wherein this Court said:
"Constitution § 17, makes the right of the owner of private property superior to that of the public, reversing the former rule that the individual might be made to suffer loss for the public. He may still be compelled to part with his property for public use, but only on full payment for it or any right in relation to it... . The decisions of this court since the constitution of 1890 give full effect to the just rule established by its seventeenth section, by maintaining the right of the owner to be fully compensated for any loss of value sustained from any physical injury to his property or disturbance of any right in relation to it, whereby its market value is diminished.
"... Due compensation is what ought to be made, i.e., what will make the owner whole pecuniarily for appropriating or injuring his property by any invasion of it cognizable by the senses, or by interference with some right in relation *384 to property whereby its market value is lessened as the direct result of the public use." (Emphasis added). 88 Miss. at 486-487, 42 So. at 205.
Still another description of the compensation to be made is contained in 26 Am.Jur.2d, Eminent Domain, § 150 (1966), at page 811:
"It is, moreover, the settled rule that property cannot be taken for public use without adequate compensation, ..." (Emphasis added).
Four different descriptive words have thus been used to describe the compensation due the landowner for the taking of his property without his consent for public use: "just", "due", "full", and "adequate".
The Mississippi legislature has expressed its thoughts on this subject in a law which became effective January 1, 1972, wherein the condemnor is required to give the private landowner in writing 20 days before the hearing the condemnor's appraisal of the fair market value and the damages, if any, to the remainder.
Section 2749-04, Mississippi Code 1942 Annotated (Supp. 1972), provides in part:
"Not less than twenty (20) days prior to the date fixed for such hearing, the petitioner shall file with the circuit clerk and serve upon the defendants, or their respective attorneys, a statement showing: (1) the fair market value of the property to be condemned, determined as of the date of the filing of the petition; (2) the damages, if any, to the remainder if less than the whole is taken, giving a total compensation and damages to be due as determined by the petitioner." (Emphasis added).
Apparently the Mississippi Highway Commission was following this procedure on January 3, 1969, when the Commission wrote appellant:
"The fair market value of the parcel(s) of land referred to as parcel(s) 1:09 & 1:09(1) including all damages based on our appraisal is $40,375.00 and we hereby offer you that amount."
In fact, the Commission further advised her:
"This is to advise that you are entitled to receive at least 75 per cent of the appraisal before you will be required to vacate the premises regardless of the manner in which property is acquired."
75% of $40,375 is $30,282. Yet in December, 1969, when this matter came on for hearing, the Commission offered only two appraisers, who testified that the fair market value was $19,000 and $19,700 respectively. The Commission's appraisers testified that there were no damages to the remainder in spite of the facts that: (1) the appellant's property was being divided into two parcels by Interstate 10, a controlled access highway, and the appellant would be forced to travel three to four miles in going from one parcel to the other; (2) Interstate 10 would be from 5 to 14 feet above the surrounding land and residences constructed would be greatly below the surface of the highway; and (3) the larger parcel of appellant's remaining property would be completely separated by I-10 from the navigable portion of Parker's Creek which runs along the western boundary of appellant's property.
We feel that the trial jury did not respond to reason and award the appellant "full" and "adequate" compensation for the taking of her property. The judgment is, therefore, reversed and this cause remanded for a new trial.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, INZER and WALKER, JJ., concur.