LEE, P.J.,
 

 for the Court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. Gulf South Pipeline Company, LP (Gulf South) filed a complaint in the Special Court of Eminent Domain of Warren County against Blanche Marie Downey Pi-tre to acquire by eminent domain a right-of-way and easement through her property in Warren County, Mississippi, near the City of Vicksburg. The easement Gulf South sought to obtain was a permanent easement of approximately 5.59 acres of land for a forty-two inch gas pipeline.
 

 ¶ 2. A trial was held to determine the total amount of compensation due to Pitre. Gulf South presented the expert testimony of Brent Johnston, an appraiser, who testified that the value of the land taken for the easement was $38,250. Johnston opined that the value of the remainder of the property, including the house and workshop, would not decrease.
 

 ¶ 3. James Hamilton, the expert hired by Pitre, testified that the value of the land and damages to the remainder of the property was $175,000. Using the sales comparison approach, Hamilton determined that the fair market value of the property before the installation of the pipeline was $840,905, and the fair market value of the property after the installation of the pipeline would be $667,261. Hamilton also determined that the value for the temporary easement which would be needed during construction of the pipeline would be $3,751. The difference between the estimated before fair market value and after fair market value with the temporary easement included totaled $177,395, which Hamilton rounded to $175,000. Gulf South moved to limit or strike Hamilton’s testimony as having no reliable foundation. The trial court denied Gulf South’s motion.
 

 ¶ 4. After a two-day trial, nine of the twelve jurors returned a verdict in favor of Pitre for $175,000. Gulf South moved for a judgment notwithstanding the verdict (JNOV), which was denied. Gulf South now appeals, asserting the following issues: (1) the trial court erred in allowing the jury to consider Hamilton’s testimony, and (2) the trial court erred in denying Gulf South’s motion for a JNOV and not entering a judgment for $38,250.
 

 ¶ 5. Pitre cross-appeals, asserting the following issues: (1) the trial court erred
 
 *521
 
 in holding that she waived her right to file a motion to dismiss; (2) the trial court erred in ruling that the only issue to be decided was the value of the property; (3) the trial court erred in granting Gulf South the right of entry; and (4) the trial court erred in excluding evidence relating to the devaluing of the property.
 

 ¶ 6. Finding no error, we affirm.
 

 STANDARD OF REVIEW
 

 ¶ 7. The “standard of review for the trial court’s admission or suppression of evidence, including expert testimony, is abuse of discretion.”
 
 Tunica County v. Matthews,
 
 926 So.2d 209, 212(¶ 5) (Miss.2006). “Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand.”
 
 Id.
 
 at 212-13(¶ 6) (quoting
 
 Crane Co. v. Kitzinger,
 
 860 So.2d 1196, 1201(¶20) (Miss.2003)). “The party offering the expert’s testimony must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation.”
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 36(¶ 11) (Miss.2003).
 

 DISCUSSION
 

 I. DID THE TRIAL COURT ERR IN ALLOWING PITRE’S EXPERT TO TESTIFY AS TO THE DECREASE IN VALUE OF THE PROPERTY CAUSED BY THE PIPELINE?
 

 II. DID THE TRIAL COURT ERR IN DENYING GULF SOUTH’S MOTION FOR A JNOV AND MOTION TO ENTER A JUDGMENT OF $38,250?
 

 ¶ 8. Gulf South argues that Hamilton’s testimony should have been limited or excluded because it was based on unsupported speculation.
 

 ¶ 9. Taking into consideration the property’s highest and best use, Hamilton examined the property under the cost approach, the market data or sales comparison approach, and the income approach. Hamilton determined that the sales comparison approach was the best indicator of the fair market value of Pi-tre’s property. Hamilton analyzed six land sales in Warren County between 2004 and 2007 and made the appropriate adjustments to determine the market value of the property without the pipeline. However, Hamilton was not able to find any land in the area that had sold with a pipeline on it to use as a comparison to determine the after fair market value of the property. Despite not having comparable land sales, the trial court allowed Hamilton to testify.
 

 ¶ 10. To determine the value of the property with the pipeline running through it, Hamilton used percentages that, in his opinion, reflected how much the property would decrease in value. Hamilton testified that once the pipeline was installed, the value of the remaining land not subject to the easement would decline by fifteen percent; the workshop would decline in value by thirty percent; and the house would decline in value by twenty percent. He determined that the workshop would lose the most value because it was closest to the pipeline, and that the house would not lose as much value as the workshop because it was further away from the pipeline. Gulf South argues that the percentages used by Hamilton were arbitrary and should have been excluded.
 

 ¶ 11. Gulf South’s expert, Johnston, determined that the value of the property would decline zero percent after the installation of the pipeline. No indication was given as to how this percentage was reached, but Johnston’s testimony was still deemed admissible by the trial court.
 
 *522
 
 Like Hamilton, Johnston was not able to provide any comparable sales for property that had sold with an installed pipeline on it. Regardless, Gulf South argues that Johnston’s testimony was properly admitted, but without any comparables, Hamilton’s testimony should have been excluded because the burden of proof was different for Pitre than Gulf South.
 

 ¶ 12. In determining the admissibility of expert testimony, Mississippi uses the standard initially laid out by the United States Supreme Court in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and later modified in
 
 Kumho Tire Co. v. Carmichael,
 
 526 U.S. 137, 158, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
 
 McLemore,
 
 863 So.2d at 39 (¶ 22-24). . That standard is a two-pronged test.
 
 Id.
 
 at 38(¶ 16). For expert testimony to be admissible, it must be both relevant and reliable.
 
 Id.
 
 The testimony is relevant if it will “assist the trier of fact to understand the evidence or to determine a fact in issue.” M.R.E. 702. In determining whether the principles and methods used are reliable,
 
 Daubert
 
 provides “an illustrative, but not an exhaustive, list of factors” that trial courts may use in assessing the reliability of expert testimony.
 
 McLemore,
 
 863 So.2d at 38(¶ 16) (quoting
 
 Pipitone v. Biomatrix, Inc.,
 
 288 F.3d 239, 244 (5th Cir.2002)). The
 
 Daubert
 
 factors include:
 

 whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique’s operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.
 

 Id.
 
 at 37(¶ 13) (citing
 
 Daubert,
 
 509 U.S. at 592-94, 113 S.Ct. 2786). “Depending on the circumstances of the particular case, many factors may be relevant in determining reliability, and the
 
 Daubert
 
 analysis is a flexible one.”
 
 Id.
 
 at 38(¶ 16). The trial judge serves as a gatekeeper on questions of admissibility of expert testimony.
 
 Id.
 
 at 40(¶ 25).
 

 ¶ 13. Hamilton testified that he had been in the real estate business for fifty-one years, and he had been a certified appraiser for at least fifteen years. He testified that he was certified in three states and had testified as an expert in forty or fifty eminent domain cases. Hamilton testified that since it was impossible to use a formula to calculate the damage to the property, the appraisal was based on his opinion, which was formulated from his education and years of experience. Hamilton testified that his opinion was based on sufficient facts and data and was the product of reliable real estate appraisal principles and methods.
 

 ¶ 14. Hamilton testified that “[a]nytime you’ve got a gas line or something to that effect on a piece of property, people are going to have an diversion [sic] to buying it.” Contributing to Hamilton’s opinion that the property would decrease in value was the fact that Pitre would have to get permission from Gulf South if she ever desired to build an access road to the north portion of her property, which will be completely severed from the rest of the property by the pipeline. Also, Pitre had done extensive erosion control work on the property which would be partially destroyed by the installation of the pipeline. Pitre also lost the use of her land for growing timber over the pipeline.
 

 ¶ 15. This Court has explained the burden of proof for eminent domain cases as follows:
 

 
 *523
 
 The burden of proof in an eminent domain case is unique, because the government is depriving the citizen of his or her property.
 
 Sarphie v. Mississippi State Highway Comm’n,
 
 275 So.2d 381, 383 (Miss.1973). Therefore, the State has the “non-delegable” burden to establish a prima facie case of the value of the property taken.
 
 Id.
 
 If the condemnor fails to establish the prima facie case, a dismissal of the proceedings would be required.
 
 Mississippi State Highway Comm’n v. Fisher,
 
 249 Miss. 198, 201-02, 161 So.2d 780, 781 (1964). The supreme court explained that “[t]he reason for placing the burden on the condemnor is that if it offers no evidence of the value of the property taken there is no basis for awarding any damages and there could be no compliance with Section 17, Mississippi Constitution.”
 
 Id.
 
 After a prima facie case has been established, if the party whose property is being condemned desires to receive greater compensation, then it must present evidence of a higher valuation.
 
 Ellis v. Mississippi State Highway Comm’n,
 
 487 So.2d 1339, 1342 (Miss.1986).
 

 Martin v. Miss. Transp. Comm’n,
 
 953 So.2d 1163, 1166(¶ 10) (Miss.Ct.App.2007). Therefore, the only purpose of Hamilton’s expert testimony was to present evidence of a higher valuation than was presented by Johnston.
 

 ¶ 16. We find that Hamilton’s testimony was competent and relevant, and it was for the jury to pass upon the credibility and weight of his testimony. We cannot hold Hamilton’s testimony to a strict
 
 Dau-bert
 
 analysis because he was unable to find comparable sales to compute an after fair market value. No argument was made that Hamilton was not a qualified expert. Gulf South only challenges his method of calculating the after fair market value of the property. We find that the trial judge, as the gatekeeper, did not err in allowing the jury to hear Hamilton’s testimony. Since we also find that Hamilton’s testimony was properly allowed, we find that Gulf South’s motions for a JNOV and a judgment in the amount of $38,250 were properly denied.
 

 Cross appeal
 

 ¶ 17. Pitre cross-appeals, making the following arguments: (1) she did not waive her right to file a motion to dismiss despite failing to do so within five days of trial in compliance with Mississippi Code Annotated section 11-27-15 (Rev.2004); (2) the trial court erred in holding that the only issue to be decided at trial was the value of the property; (3) the trial court erred in granting Gulf South the right of entry onto Pitre’s property to start installation of the pipeline; and (4) the trial court erred in excluding evidence concerning the potential danger associated with the pipeline.
 

 ¶ 18. In making these arguments, Pitre cites many instances in which she believes the trial court erred, but Pitre never asks this Court for any specific relief regarding the errors the trial court may have committed. Mississippi Rule of Appellate Procedure 28(a)(7) states that “[tjhere shall be a short conclusion stating the precise relief sought” after the argument section in the briefs filed with this Court. Since no specific argument is made stating what relief Pitre seeks, we find that her cross-appeal is procedurally barred.
 
 See Sorey v. Crosby,
 
 989 So.2d 485, 487(¶ 9) (Miss.Ct.App.2008) (holding that failure to comply with the requirements of M.R.A.P. 28 renders an argument procedurally barred).
 

 ¶ 19. THE JUDGMENT OF THE WARREN COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF
 
 *524
 
 THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.